JOHN DOE,
by and through his next friend JANE DOE,

        Plaintiff,

v.

                                    CIV. NO.:

HAMILTON COUNTY BOARD OF EDUCATION
d/b/a HAMILTON COUNTY SCHOOLS;
JAMES JARVIS, Individually and as an
Agent of HAMILTON COUNTY SCHOOLS;
JESSE NAYADLEY, Individually and as an
Agent of HAMILTON COUNTY SCHOOLS; and
ANDRE MONTGOMERY, Individually and as an
Agent of HAMILTON COUNTY SCHOOLS;

        Defendants.

## COMPLAINT AND JURY DEMAND

### Introduction

1.    Ooltewah High School ("OHS") and Hamilton County Schools ("HCS"), operated

by Defendant Hamilton County Board of Education ("School Defendant" or "HCBE"), have a

long history of violent hazing, bullying, harassment, and sexual assault of young male student-

athletes. School officials – including OHS Principal James Jarvis, Athletic Director Jesse

Nayadley, and Coach Andre Montgomery – knew about harassment and hazing of male student-

athletes, commonly referred to as the school's "beat in" or "Freshmen Rack" culture.

Defendants' failure to remediate this rampant abuse resulted in escalation of male student-

athletes' harassment, hazing, and assaults of teammates.

2.    In 2015, Plaintiff John Doe was a freshman member of the OHS varsity basketball

team. Shortly after basketball season began, a senior teammate, K.J., physically beat John in

study hall and called him "bitch-made." Fellow players called John a "faggot," and coaches called John and other team members "ladies" as a way of criticizing and attempting to demean them. When John tried to address K.J.'s behavior with Defendant Montgomery, the Coach told John to "man up."

3.     The unchecked hazing and sexual harassment within the OHS boys' basketball team reached a brutally violent crescendo on December 22, 2015, when the team and coaches attended an out-of-town overnight tournament in Gatlinburg. That night, while Defendant Montgomery and Assistant Coach Williams were upstairs in the cabin, two sophomore teammates, J.B. and J.N., pinned John face-down on a bed, and K.J. – the same student who previously had beaten John and called him "bitch-made" – rammed a pool cue into John, forcefully penetrating through his clothing and sodomizing John. The vicious attack perforated John's rectal wall and bladder, and he required emergency surgery, which included *inter alia* removal of part of the pool stick from John's bladder.

4.     A juvenile court subsequently found K.J. guilty of committing aggravated rape and assault against John Doe. The court also found J.B. and J.N. guilty of committing aggravated assault against John.

5.     John, by and through his next friend Jane Doe, seeks recovery for the significant damages he has suffered as a result of Defendants' violations of the Education Amendments of 1972 (Title IX) and other federal and state laws described in this Complaint. Plaintiff also seeks punitive damages in an amount sufficient to deter Defendants from violating others' rights in the future.

2

## Jurisdiction and Venue

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C § 1681 *et seq.*, and the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983.

7.      This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as it forms part of the same case or controversy stemming from the allegations that form the basis of the federal claims.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as all relevant facts giving rise to this case and damages sustained by Plaintiff occurred in Sevier and Hamilton Counties, Tennessee, which are part of the United States District Court for the Eastern District of Tennessee.

## Parties

9.      Plaintiff John Doe was a student-athlete at OHS.  John is a minor and a resident of Fulton County, Georgia.

10.      Jane Doe is the natural mother and next friend of John Doe.  Jane is a resident of Fulton County, Georgia.

11.      Defendant HCBE, d/b/a HCS, is a government entity organized to operate, manage, and control public schools, including OHS, in Hamilton County, Tennessee.

12.      Defendant HCBE is a recipient of federal funds within the meaning of 20 U.S.C. § 1681(a).

13.      Defendant James Jarvis is a resident of Hamilton County, Tennessee, and at all relevant times was the Principal of OHS and employed by and in the course and scope of his

employment with HCBE. Jarvis coached the OHS boys' football and basketball teams before becoming Athletic Director and then Principal of OHS.

14. Defendant Jesse Nayadley is a resident of Hamilton County, Tennessee, and at all relevant times was the Athletic Director of OHS and employed by and in the course and scope of his employment with HCBE. He also served as the OHS boys' basketball team in 2012-2013 and 2013-2014.

15. Defendant Andre "Tank" Montgomery is a resident of Hamilton County, Tennessee, and at all relevant times was the Head Coach of the OHS boys' basketball team and employed by and in the course and scope of his employment with HCBE.

### **Factual Allegations**

### ***Known History of Sexual Abuse of Male Student-Athletes at HCS***

16. There is a long history of sexual abuse of male student-athletes at HCS and OHS that is well-known to School Defendant's administrators and staff.

17. Upon information and belief, Ooltewah Middle School teacher and baseball coach Stan Evans sexually abused at least 38 male student-athletes throughout the course of his 20+ years teaching and coaching at HCS, from 1979-1998. For two decades, victims and parents reported Evans' abuse of students to school administrators, who ignored the reports and complaints. In 1997, School Defendant promoted Evans to a coaching position on the OHS boys' basketball team.

18. In 1998, local law enforcement began investigating Evans, and administrators placed Evans on paid administrative leave "due to a legal matter." School Defendant then allowed Evans to quietly resign, and waited over two years after Evans resigned to contact the

4

Tennessee Department of Education to flag Evans' teaching license for allegations regarding child molestation.

19.     Upon information and belief, OHS teacher, basketball coach, and cross-country coach Jason Hamrick sexually abused and harassed numerous male student-athletes during his 15-year career with School Defendant, from 1999-2014. Shortly after Hamrick began working at OHS, school administrators – including but not limited to Defendant Jarvis – began receiving complaints about Hamrick's inappropriate interactions with male students, including a four-page letter from a parent. School Defendant took no disciplinary action against Hamrick and granted him tenure in 2002.

20.     Administrators continued receiving reports and complaints about Hamrick's inappropriate actions with boys, including that he slept in the same hotel room as three male students while chaperoning a school trip. In 2007, OHS received an anonymous email warning School Defendant that a child molester was on its staff. Local law enforcement investigated, and a boy reported that while at Hamrick's home, Hamrick talked to him about masturbating and touched the boy's penis. School Defendant responded by telling Hamrick to abstain from supervising students alone and/or talking to students in the school hallway and common areas.

21.     In 2014, a junior student at OHS reported that as a freshman he had spent the night at Hamrick's house approximately 20 times. Another student reported Hamrick had paid him to perform manual labor at Hamrick's house. The following day, Defendant HCBE's director of human resources met with Hamrick and allowed him to resign. As of 2016, Hamrick's teaching license remains active.

5

### *Known Culture of Hazing and Bullying of Male Student-Athletes at HCS*

22. OHS boys' basketball and football are school-sanctioned and school-sponsored athletic programs.

23. Attorney Courtney Bullard was retained by School Defendant to conduct an independent investigation of *inter alia* "the climate of the OHS basketball program regarding the reporting and addressing of bullying, hazing and/or sexual harassment." Bullard found, as set forth in her August 4, 2016, Report ("Bullard Report"), that "a culture of hazing existed on the varsity basketball team prior to the Gatlinburg incident."

24. The OHS boys' basketball and football teams have a history of violent hazing traditions, known as the "beat-in culture," "racking in," or the "freshmen rack," during which older players would turn out the lights in the school locker room, grab a younger player, and punch him with fists from the neck down.

25. Upon information and belief, the OHS girls' athletic programs and teams have not been similarly plagued by hazing and violence.

26. Coaches of the OHS boys' athletics teams – including but not limited to Defendants Jarvis, Nayadley, and Montgomery – knew about the "beat-in culture" and "racking in."

27. In September 2011, a star football player at Hunter Middle School – a Hamilton County public school which feeds into OHS – whipped a male student with a leather belt in the school locker room. Two boys held the victim upside down by his ankles while the football player beat him and another classmate video recorded the beating. Three boys involved in the whipping were charged with three counts of aggravated assault and false imprisonment.

6

28.     In the summer of 2015, student G.W. was entering his first year at OHS, and he began participating in OHS boys' basketball team tryouts and workouts which went on until the start of the school year.

29.     Older boys on the team subjected G.W. to "racking in" on a regular basis, when they would close and lock the school locker room door, turn off the lights, and beat G.W.

30.     In October 2015, G.W. told his mother about the OHS locker room beatings. G.W.'s mother reported the beatings of her son directly to Defendant Nayadley, who refused to investigate or take any action.

31.     Players often openly spoke about "the rack" in front of Defendant Montgomery and Assistant Coach Karl Williams.

32.     Montgomery's office was adjacent to the boys' locker room, separated only by a wall, and noise from the locker room could be heard from outside the door.

33.     Montgomery and Williams disciplined one student who participated in "the rack" by having the student run drills called "suicides."

34.     The coaches took similar measures to address what they regarded as excessive horseplay by requiring players to run during practice and do physical activities such as push-ups and squats.

35.     The Bullard Report found "those efforts were not effective at addressing the behavior," "racking in and horseplay continued," and "other measures, such as benching a player or suspension, should have been considered."

36.     On several occasions, Coach Montgomery entered the locker room when the lights were off, and he turned the lights on and told the team to "knock it off."

7

37.     Members of the OHS junior varsity and varsity basketball teams attended study hall with Montgomery which took place after school and before practice.

38.     The Bullard Report stated there was little or no supervision in the study hall, and on at least one occasion players entered into a heated altercation while in the study hall.

39.     Pursuant to Tennessee's Anti-Harassment, Intimidation, and Bullying Statute, T.C.A. § 49-6-4503, Defendants were required to investigate these incidents of harassment, inform the parents or legal guardians of the students involved in the harassment, and report findings and disciplinary action to the director of schools and chair of the school board. Defendants failed to do so.

### *OHS Students Hazed and Sexually Harassed John Doe Prior to December 22, 2015*

40.     John Doe spent his early years in Atlanta, Georgia. In summer 2015, John Doe moved to Hamilton County, Tennessee with his mother, Jane Doe.

41.     In fall 2015, John played on the OHS freshmen football team. The team's season ended in November 2015.

42.     Thereafter, John began playing on OHS boys' varsity basketball team. Four freshmen, including John, were on the varsity team.

43.     In fall 2015, K.J. was a senior at OHS and a member of the boys' basketball and football teams.

44.     In fall 2015, J.B. was a sophomore at OHS and a member of the boys' basketball and football teams.

45.     In fall 2015, J.N. was a sophomore at OHS and a member of the boys' basketball and football teams.

8

46.     In fall 2015, K.J., J.B., and J.N., who had finished the varsity football season in November, led hazing and "beat ins" on the OHS varsity basketball team. K.J., J.B., and J.N. had all been subjected to the "Freshmen Rack" when they were freshmen at OHS.

47.     "Racking in" of freshmen on the OHS boys' basketball team began in late November 2015 and occurred one to three times per week.

48.     K.J. and John played the same position on the basketball team. John Doe started the first three games of the season. When K.J. ended his football season and joined the basketball team in November, K.J. resumed the starting position.

49.     K.J., facing competition from John for the same position on the basketball team, loudly taunted and insulted John during practices.

50.     K.J. referred to John as "bitch made," a gender-based slur which refers to males who are weak or effeminate. Defendant Montgomery heard the slur, and he told John to "man up" when John asked the coach if he had heard what K.J. said.

51.     At other times, team members called John a "faggot." OHS coaches referred to basketball players as "ladies," using that term as a means of criticism.

52.     In December 2015, John was subjected to violent hazing by the basketball team, including an incident during which K.J. physically beat John in the basketball team study hall. John struck back in self-defense. Following the incident in study hall, it was apparent that K.J. had a problem with John, who was not submissive to K.J.

53.     Coach Montgomery was aware of K.J.'s animosity toward John and did nothing to protect John.

54.     Coach Montgomery frequently told the boys' basketball team that they were a "family" and "what happens in the family stays in the family."

9

## John Doe Suffered Brutal Sexual Assault and Hazing on December 22, 2015

55. From December 19-23, 2015, the OHS boys' basketball team traveled to Gatlinburg, Tennessee to participate in the Smokey Mountains Christmas Classic basketball tournament.

56. Defendant Montgomery and Assistant Coach Williams drove the OHS basketball team to Gatlinburg in the coaches' personal cars.

57. During the drive from OHS to Gatlinburg, K.J., J.B., and J.N. taunted John Doe and the other freshmen team members, warning the freshmen they would be subjected to some sort of ritual initiation at the cabin where they would be staying during the tournament.

58. All fourteen players, Coach Montgomery, his wife, and Assistant Coach Williams stayed in one cabin at JJ's Hideaway, located at 508 Laurel Mountain Road in Gatlinburg. Coach Montgomery and his wife stayed in one of the upstairs rooms and Assistant Coach Williams stayed in the other. The fourteen boys stayed in the three rooms downstairs.

59. The coaches left the boys unchaperoned at the cabin for hours on end.

60. Almost immediately after arriving, older players began grabbing freshmen and throwing them into a hot tub. The freshmen forcefully resisted but were overcome by groups of older players.

61. K.J. and others grabbed John, and he fought back. John was thrown into the hot tub fully clothed.

62. Coach Montgomery was informed of the hot tub incident, and he made K.J. and another player run and do push-ups, which angered these players.

63. On December 20, 2015, team members used a pool cue to prod a freshman player in his rectum. The following day, December 21, 2016, the same team members did the same

10

thing to another freshman player. During each incident, the victimized student screamed and yelled, and the coaches staying on the top floor of the cabin – who were able to hear the screams – did not come down to the floor where the assaults were occurring to investigate.

64. Upon information and belief, when K.J. was a freshman member of the OHS boys' basketball team three years earlier, he had been victimized in the same way.

65. On December 22, 2015, the OHS boys' basketball team played in the tournament, and, upon information and belief, K.J., J.B., or J.N. threatened to shoot one of the opposing team's players. OHS lost the game, and afterward, when several of OHS basketball players were left unsupervised in a parking lot, they harassed the opposing team's players.

66. The boys' basketball team and their coaches then returned to the cabin to eat dinner.

67. After dinner, at approximately 8:30 pm, John went downstairs, where several boys – K.J., J.B., and J.N. – grabbed him, threw him in one of the rooms, and locked the door.

68. J.B. and J.N. pinned John down face down on a bed, one lying across his back while the other held down his hips. While the other two boys held John down, K.J. used both of his hands to ram a pool cue into John, forcefully penetrating through two layers of his clothing and sodomizing him, while John screamed in pain. The assailants dropped the pool cue and ran out of the room.

69. Two freshmen found John bleeding and in pain and alerted Coach Montgomery, who went downstairs and found John lying on the floor.

70. Coach Montgomery and Assistant Coach Williams went downstairs and found John lying on the floor, covered in blood, urine, and feces.

11

71.     Tennessee law, T.C.A. § 37-1-605(a)(4), requires mandatory reporting by a teacher or school official of child abuse and sexual abuse.  Defendant HCBE maintains a policy requiring "any employee who has knowledge or suspected knowledge of any abuse to report" to law enforcement, Department of Children's Services, or a juvenile judge.

72.     Despite discovering the violent scene and learning of the sexual assault of one of their players, neither Coach Montgomery nor Assistant Coach Williams reported child abuse to the Department of Children's Services or even called the police.  Neither coach did anything to protect the scene or gather evidence, including the cell phones of basketball players.

73.     Coach Montgomery and Assistant Coach Williams took John to LeConte Medical Center emergency department, where he was admitted at approximately 10:30 pm.

74.     At some point during the night of December 22, 2015, Coach Montgomery called Athletic Director Nayadley, who was in the area to see his son, a member of the OHS basketball team, compete in the basketball tournament.

75.     At approximately 12:20 am, a nurse at LeConte Medical Center contacted the Gatlinburg Police Department to report the assault.

76.     Shortly after the call, Detective Rodney Burns arrived at LeConte Medical Center and began investigating the assault.

77.     John was examined, diagnosed with a rectal hemorrhage, and discharged at approximately 2:35 am.

78.     John returned to the cabin with the coaches and Detective Burns to collect his belongings to leave.  John immediately had trouble walking down the stairs, and as he was gathering his belongings to put in his bag, he collapsed on to the floor, saying "I'm hurting" and "I think I'm bleeding."

12

79.     After John collapsed, Coach Montgomery offered to return John to the hospital. Detective Burns insisted that the county EMS be called.

80.     EMS arrived and took John, along with Coach Montgomery, to LeConte Medical Center, where John was re-admitted at approximately 3:45 am.

81.     At LeConte, John received a CT scan that revealed a likely perforation of the rectal wall and bladder and the presence of a foreign object.

82.     Suspecting John required emergency surgery, medical personnel at LeConte Medical Center transferred John to the University of Tennessee Medical Center Trauma Service ("UT Medical Center") in Knoxville.

83.     Upon arrival at UT Medical Center, John underwent emergency surgery to repair the damage to his rectal wall and bladder and to remove the tip of the cue stick.

84.     Detective Burns remained at the cabin. After securing permission from the assailants' parents to speak with each student, reading them their rights, and obtaining waivers of those rights, all three assailants confessed to the assault on John Doe.

85.     At approximately 11:30 am on December 23, 2015, Superintendent Rick Smith, Assistant Superintendent Lee McDade, Defendant Jarvis, and Secondary Operations Director Steve Holmes, were notified about the previous night's brutal attack.

86.     No one from OHS or School Defendant reported the assault to law enforcement or Department of Children's Services at any point after learning of the violent sexual assault on John.

87.     During the time John was in the hospital and undergoing surgery, Defendant Nayadley – who was left in charge of the team – and Defendant Jarvis did not immediately contact any of the parents of the boys on the basketball team.

13

88.     Defendants Nayadley and Jarvis determined that the OHS basketball team would continue to play at the tournament, even though the players were worn out and confused as to why they were playing.

89.     The Bullard Report states, "[i]n having the team play, Mr. Nayadley ran the risk of sending a message to the freshmen players that the conduct was acceptable."

90.     On December 24, 2015, Superintendent Rick Smith alerted HCBE to an "incident" which occurred on the OHS boys' basketball team trip to Gatlinburg but did not disclose any other details.

91.     HCBE did not receive the details of the John Doe assault until December 30, 2015.

92.     On December 30, 2015, the Department of Children's Services intake hotline received a referral related to the assault on John.

93.     On January 6, 2016, OHS officially cancelled the remainder of the basketball season, though the team had already played four additional games since the assault.

94.     After John Doe was sexually assaulted, Coach Montgomery met with the team and reminded the players, "we're a family and what goes on in the family stays in the family."

95.     Upon information and belief, HCBE did not provide training to administrators, teachers, coaches, or volunteers on sexual abuse or child abuse; recognizing, investigating, or remediating student-on-student sexual assault and harassment; or reporting child abuse or neglect.

96.     HCBE does not require an employee to sign and acknowledgment of receipt of the "Neglect and Abuse" policy, as it does with other school policies.

97.     Neither School Defendant nor any of its administrators conducted an investigation into the events of December 22, 2015, at any time following the assault.  HCBE maintains a policy not to conduct an investigation once law enforcement is involved in the matter.

98.     On January 14, 2016, criminal charges were filed against Coach Montgomery, Assistant Coach Williams, and Athletic Director Nayadley for failure to report child abuse when they discovered John had been assaulted.

99.     On May 11, 2016, Athletic Director Nayadley accepted a pre-trial diversion resolution to his charges.

100.    One week later, on May 18, 2016, Coach Montgomery was indicted by a grand jury on four counts of failure to report child abuse.

101.    On May 25, 2016, the charges against Assistant Coach Williams were dropped due to his lack of training on mandatory reporting.

102.    On August 30, 2016, K.J. was found guilty of aggravated rape and aggravated assault.

103.    On August 30, 2016, J.B. and J.N. were found guilty of aggravated assault.

104.    John did not return to OHS following the assault.

## COUNT I
### Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1981, *et seq.*
### (School Defendant)

105.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

106.    School Defendant was on notice of misconduct in the form of violent, gender-based hazing within the OHS boys' basketball team prior to the assault on John.

107.    By their actions and inactions, Defendants created a climate in which such misconduct was tolerated, thus encouraging continued and repeated misconduct and proximately causing injury to John.

108.    Upon information and belief, Defendant HCBE, through its employees Jarvis, Nayadley and Montgomery, was also on actual notice of violent gender-based hazing within the OHS football and basketball teams prior to the assault of John.

109.    By their actions and inactions, Defendants created a climate in which such misconduct was tolerated, thus encouraging continued and repeated misconduct and proximately causing injury to John.

110.    Defendant HCBE, through its employees, administrators, and authorized volunteer supervisors, including but not limited to Coach Montgomery, and Athletic Director Nayadley had actual knowledge of the discrimination, harassment, and violence occurring within the boys' basketball team.

111.    Defendant HCBE, through its employees, administrators, and authorized volunteer supervisors, including but not limited to Coach Montgomery and Assistant Coach Williams, had actual knowledge of the discrimination and harassment of John.

112.    The individuals with actual knowledge had the authority to investigate and take meaningful corrective action to end the discrimination and harassment but failed to do so.

113.    The discrimination and harassment occurring within the OHS boys' basketball team, including sexual assaults and violent, gender-based hazing, effectively barred John and others access to an educational opportunity and benefit.

114. John suffered repeated student-on-student harassment, and violent, gender-based hazing, harassment, and intimidation, including sexual assault, which is considered discrimination based on sex and is prohibited by Title IX.

115. The gender-based hazing and sexual harassment suffered by John was severe, pervasive, and objectively offensive.

116. The gender-based hazing and sexual harassment suffered by John created a hostile environment at OHS.

117. By its actions and inactions, Defendant HCBE acted with deliberate indifference toward the rights of John and other male student-athletes to a safe and secure education environment, thus materially impairing John's ability to pursue his education at OHS in violation of the requirements of Title IX.

118. Specifically, School Defendant violated Title IX by, *inter alia*:

    a.    choosing to take no action to protect John, despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent discrimination and harassment, including violent, gender-based hazing and sexual assault occurring within the boys' basketball team and other male sports programs;

    b.    being deliberately indifferent to and failing to take action on known discrimination and harassment suffered by John prior to the sexual assault;

    c.    being deliberately indifferent to the known allegations of violent, gender-based hazing, harassment, intimidation and the unique dangers to younger male athletes;

    d.    failing to maintain and enforce an adequate policy against hazing and bullying or, alternatively, being deliberately indifferent thereto, as required by T.C.A. § 49-2-120;

    e.    creating a climate which tolerated violent, gender-based hazing, harassment, and intimidation, including sexual assault and rape within the OHS boys' basketball team, or, alternatively, being deliberately indifferent thereto;

f.　failing to take appropriate action against the OHS boys' basketball team and its members for misconduct occurring before and following the rape of John or, alternatively, being deliberately indifferent thereto, and thereby providing implicit approval, encouragement, and ratification to continued misconduct;

g.　failing to provide policy or training for its employees, faculty members, coaches, or volunteers about sexual harassment and assault, sexual abuse, child abuse, or mandatory reporting, despite decades of allegations of abuse within HCS boys' athletics, thereby creating a climate where such misconduct was tolerated and encouraged to continue without consequence;

h.　failing to report prior known abuse, as required by T.C.A. § 37-1-403 and HCBE policy, thereby creating a climate where such misconduct was tolerated and encouraged to continue without consequence;

i.　failing to conduct their own internal investigation into the assault and other allegations of misconduct and maintaining a policy of refusing to conduct internal investigations in contexts where law enforcement becomes involved;

j.　failing to investigate, inform parents, and report harassment, intimidation, and bullying occurring within the OHS boys' basketball team, as required by T.C.A. § 49-6-4503;

k.　failing to report the rape of John, as required by T.C.A. § 37-1-403 and HCBE policy, to any and all regulatory authorities having jurisdiction over the matter as a matter of law; and

l.　through other actions, inactions, and deliberate indifference.

119.　As a direct and proximate result of said Defendants' actions, inactions, and deliberate indifference, John sustained and continues to sustain injuries for which he is entitled to be compensated.

### COUNT II
### Violation of Plaintiff's Constitutional Rights, brought under 42 U.S.C. § 1983
### (All Defendants)

120.　Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

18

121.    Defendant HCBE created a danger to students, including John Doe, through its adoption and perpetuation of a pattern, practice, and policy allowing and perpetuating, under color of law, violent, gender-based hazing and discrimination within the OHS boys' basketball team and other male sports programs.

122.    Defendant HCBE had a duty to maintain and enforce a written policy or rules prohibiting student hazing, as required by T.C.A. § 49-2-120, and failed to do so.

123.    Defendant HCBE has received repeated complaints of sexual assault and harassment of male students, and deprivation of those students' constitutional rights, at HCS.

124.    Defendant HCBE had a duty to maintain and enforce a policy and/or training for their employees, administrators, faculty members, staff, volunteers, and other agents regarding how to identify, investigate, and respond to student hazing and/or student-on-student abuse and sexual assault, and failed to do so.

125.    Defendant HCBE's absence of policies and failure to train its employees and agents is closely related to or caused the discrimination and violent, gender-based hazing against John, violating his Constitutional right to bodily integrity and his property right to education.

126.    Defendant HCBE had actual notice and knowledge of the dangers of sexual harassment and assault faced by its young male student-athletes, and John specifically, yet took no meaningful remedial or disciplinary action, choosing not to investigate or supervise activity in the boys' locker room and elsewhere, which allowed the discrimination, harassment, and violent, gender-based hazing to occur.

127.    Defendants Jarvis, Nayadley, and Montgomery were at all times relevant hereto acting under authority and color of law in creating a danger to students, including Plaintiff, by

19

perpetuating a pattern, practice, and policy allowing violent, gender-based hazing and discrimination within the OHS boys' basketball team.

128.    As a direct and natural consequence of Defendants' action, inaction, and deliberate indifference and violations of his Constitutional rights, John suffered, and continues to suffer, including but not limited to, physical injuries, emotional distress, psychological trauma, and denial of education and educational opportunities.

129.    As a direct and proximate result of Defendants' action, inaction, and deliberate indifference and violations of his Constitutional rights, John sustained and continues to sustain injuries for which he is entitled to be compensated.

**COUNT III**
**Tennessee Government Tort Liability**
**(All Defendants)**

130.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

131.    Defendant HCBE owed Plaintiff common law duties that were breached and are therefore liable under the Tennessee Government Tort Liability Act, T.C.A. § 29-20-205 for failure to exercise reasonable care to supervise and protect John, including from the foreseeable intentional acts of third parties that involved hazing and violent misconduct.

132.    Defendant HCBE, through its employees Defendants Jarvis, Nayadley, and Montgomery, breached these duties and was negligent by, among other things:

    a.    failing to appropriately supervise the OHS basketball team during the Smokey Mountains Christmas Classic tournament, when John was away from home and under their exclusive custody and care;

    b.    failing to investigate and discipline past reports of hazing within the OHS basketball and football teams;

c.      failing to have in place and/or enforce policies to protect male student-athletes from violent hazing, including harassment, intimidation, sexual assault and rape;

d.      failing to take precautions to prevent known dangers of violent, gender-based hazing within the OHS basketball team and other male sports programs;

e.      failing to act reasonably under the circumstances; and

f.      other negligent acts and omissions.

133.    As a direct and proximate result of Defendant's negligence, John sustained and continues to sustain injuries for which he is entitled to be compensated.

## COUNT IV
### Damages

134.    Plaintiff incorporates the allegations of the previous paragraphs as if fully set forth herein.

135.    As a result of the assault on December 22, 2015, John Doe was severely and permanently harmed.

136.    John Doe was taken to LeConte Medical Center emergency room for the first time in the late evening hours of December 22, 2015, and returned a second time during the early morning hours of December 23, 2015.

137.    When the medical personnel discovered the severity of his injuries, John Doe was transferred to the U.T. Medical Center in Knoxville where he remained until December 29, 2015.

138.    While at U.T. Medical Center, John Doe underwent open surgery on December 23, 2015, where he was diagnosed and treated for an interior rectal injury, removal of a foreign object, and an associated injury to his bladder.

139.    John Doe was released from the U.T. Medical Center with a Foley catheter which he used for approximately two weeks.

21

140.     Due to the severity of his injuries, John Doe was prescribed and took several different pain and antibiotic medications.

141.     Due to the severity of his injuries, John Doe missed several weeks of school and had physical limitations which restricted and prevented him from any athletic activity during the spring semester of 2016.

142.     Due to the severity of his injuries, John Doe has been regularly undergoing psychological counseling.

143.     As a result of the harm John Doe sustained on December 22, 2015, he suffered damages which include, but are not limited to, the following:

   a.     past and future physical pain and suffering, mental anguish and anxiety;

   b.     past and future doctor, medical, prescription and other related medical expenses;

   c.     permanent disfigurement;

   d.     loss of enjoyment of life;

   e.     reasonable attorney's fees; and

   f.     other damages not known at this time but which will be proven at the trial herein.

144.     Plaintiff seeks an award of damages in an amount to be determined by the jury.

## COUNT V
## Exemplary Damages

145.     Plaintiff incorporates the allegations of the previous paragraphs as if fully set forth herein

146.     The actions of the defendants collectively and individually were reckless, grossly negligent and deliberately indifferent.

147.    Plaintiff seeks an award of punitive damages in an amount to be determined by the jury.

**JURY DEMAND**

Plaintiff demands trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, John Doe, by and through his next friend Jane Doe, prays that after all due proceedings are had that there be judgment rendered herein in their favor awarding compensatory and punitive damages in an amount to be set by the jury and against Defendants Hamilton County Board of Education, James Jarvis, Jesse Nayadley and Andre Montgomery, together with legal interest, reasonable attorney's fees and all costs of these proceedings.

Respectfully submitted,

LAW OFFICE OF EDDIE SCHMIDT

By: Edmund J. Schmidt III, TN Bar #021313
2323 21st Avenue South, Suite 502
Nashville, Tennessee 37212
Phone (615) 678-6320
Fax (615) 454-6357
Email eddie@eschmidtlaw.com

23