# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| JOHN DOE, *et al.*, ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> HAMILTON COUNTY BOARD OF ) <br> EDUCATION, *et al.*, ) <br> ) <br> *Defendants*. ) | Case No. 1:16-CV-373 (lead) <br><br> Judge Travis R. McDonough <br><br> Magistrate Judge Christopher H. Steger |
| RICHARD ROE, SR., *et al.*, ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> HAMILTON COUNTY DEPARTMENT ) <br> OF EDUCATION, *et al.*, ) <br> ) <br> *Defendants*. ) | Case No. 1:16-CV-497 <br><br> Judge Travis R. McDonough <br><br> Magistrate Judge Christopher H. Steger |

## <u>MEMORANDUM ORDER</u>

**I.  INTRODUCTION**

This matter came before the Court on Friday, January 5, 2018, for a hearing on a Joint Motion to Compel [Doc. 134][1] filed by Plaintiffs John Doe and Richard Roe. Present for the hearing were Attorney Justin Gilbert for John Doe, Attorney Eric Oliver for Richard Roe, Attorneys Charles Purcell and Scott Bennett for the Hamilton County Board of Education ("the Board"), and Attorney Jonathan Taylor for the individual defendants. Plaintiffs seek to compel the Board to produce approximately 130 documents which the Board has asserted are protected under the attorney-client privilege and/or the work-product doctrine. Alternatively, the Board

---
[1] All references to the Court record are to the lead case, Case No. 1:16-cv-373.

asserts that such documents are protected pursuant to Fed. R. Civ. P. 26(b)(4)(C) which addresses communications between a party's attorney and that party's expert witness.

The documents withheld by the Board are identified in a privilege log ("the Privilege Log") provided to Plaintiffs [Privilege Log, Doc. 136-4]. Many of the documents withheld from production advert to communications made by or between Attorneys Courtney Bullard and Scott Bennett relating to an investigation conducted and an August 4, 2016 report prepared by Attorney Bullard ("the Bullard Report"), which investigation and report were commissioned by the Board.

Having considered the arguments of counsel, I conclude that, to the extent the Board is relying upon the attorney-client privilege and the work product doctrine as bases to avoid production of the documents in the Privilege Log, the Board waived such protections when it released the Bullard Report to the public on August 18, 2016. Further, to the extent that the Board is relying upon the belated designation of Courtney Bullard as an expert witness to invoke the protections of Fed. R. Civ. P. 26(a)(2) and 26(b)(4)(C) with respect to documents related to her investigation and report, I find that such reliance is misplaced. Attorney Bullard was not acting as a consulting or testifying expert as set forth in Fed. R. Civ. P. 26(a)(2) when she conducted her investigation and prepared her report. In fact, Attorney Bullard was not designated as an expert witness until well after the documents at issue were created. The protections of Fed. R. Civ. P. 26(a)(2) and 26(b)(4)(C) do not apply to the documents at issue.

## II. BACKGROUND

These consolidated cases arise from sexual assaults allegedly committed by three members of the Ooltewah High School (OHS) basketball team against other members of the OHS basketball team in December 2015. The Board hired Attorney Courtney Bullard to conduct

an investigation and to provide legal advice in anticipation of litigation. [*See* Doc. 134-1, Letter of Engagement to Bullard from the Board]. To this end, Attorney Bullard engaged in extensive interviews with OHS students, their parents, faculty and staff to prepare her report. She also had frequent conversations with the Board's regular attorney, Scott Bennett, to confer with him about the progress of her investigation. Following her investigation, Attorney Bullard prepared the Bullard Report, a 27 page document dated August 4, 2016, which examined, among other things, whether there was a culture of hazing, bullying, and/or sexual assault in the OHS basketball program and whether coaches and administrators were aware of such culture; whether OHS officials acted appropriately to address the ramifications of the 2015 sexual assaults; and whether OHS officials' response met legal requirements under Title IX. On August 18, 2016, presumably in response to public interest in the underlying events, the Board voted unanimously to release the complete Bullard Report to the public. The Bullard Report was released the following day and remains in the public domain.

On December 16, 2016, two of the alleged victims of the 2015 assault filed these consolidated actions against, collectively, the Board, the Principal and the Athletic Director at OHS, the coach of the OHS basketball team, and the Title IX Coordinator of the Hamilton County Department of Education. On August 21, 2017, the Board designated Attorney Bullard as an expert witness and submitted to Plaintiffs' counsel the Bullard Report as the "written report" required of a testifying expert pursuant to Fed. R. Civ. P. 26(a)(2)(B). The Board also agreed to disclose to Plaintiffs' counsel copies of witnesses' statements and other underlying materials gathered by Attorney Bullard during the course of her investigation and used by her to prepare the Bullard Report. The Board has not, however, produced approximately 130 documents comprised primarily of communications between Attorneys Courtney Bullard and

Scott Bennett relating to Attorney Bullard's investigation and the Bullard Report. The discoverability of these documents led to the present discovery dispute.

## III. DISCUSSION

### A. Expert Witness Disclosure Protection

Fed. R. Civ. P. 26(b)(4)(C) protects from disclosure certain information related to an expert witness who may testify at trial. Such protection from disclosure encompasses drafts of the expert's report, as well as communications between the attorney and the expert witness. In this case, the Board contends that the communications between the Board's attorney, Scott Bennett, and Courtney Bullard, its testifying expert, should be protected from disclosure because of the constraints imposed by Fed. R. Civ. P. 26(b)(4)(C). The Court disagrees. Attorney Bullard was not originally retained by the Board as an expert witness. Rather, she was retained to act as an attorney for the Board in anticipation of litigation. She was acting as counsel for the Board at the time she performed her investigation and prepared the Bullard Report. The documents identified in the Privilege Log were generated during the time that Attorney Bullard was acting as the Board's attorney, not after she had been designated as an expert witness. Defendant's belated designation of Attorney Bullard as an expert witness does not permit retroactive application of the disclosure protections of Fed. R. Civ. P. 26(b)(4)(C) to documents that were created while she was acting as the Board's attorney and prior to the time that she was designated as an expert witness. The Court will not impose such protections here.

### B. Attorney-Client Privilege

The Board also maintains that certain documents are protected from discovery by the attorney-client privilege. "Questions of privilege are to be determined by federal common law in federal question cases." *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998) (citing Fed. R. Civ. P.

501). Because this Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, federal common law applies to the privilege issues being raised.

The attorney-client privilege protects communications from disclosure under the following circumstances:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to the purpose, (4) made in confidence (5) by the client, (6) are at this instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection is waived.

*Reed,* 134 F.3d at 355-56; *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992) (citing *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir. 1964)). The burden of establishing the attorney-client privilege rests with the person asserting it. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983). Because the assertion of the attorney-client privilege withholds information relevant to the fact finder, it is narrowly construed and applied only where necessary to achieve its purpose of protecting client communications essential to obtain legal advice. *Fisher v. United States*, 425 U.S. 391, 403 (1976), *see also United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) ("the [attorney-client] privilege is narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit.") Consistent with the purpose of the attorney-client privilege and its narrow construction, in order for the privilege to apply, "[t]he communication must involve confidential information furnished *by the client*. Information learned from other sources is not privileged." *In re Southern Industrial Corp.*, 35 B.R. 643, 647 (Bankr. E.D. Tenn. 1983) (internal citations omitted) (emphasis added). *See also Goldfarb,* 328 F.2d at 282 ("Communications made to an attorney in the course of his professional employment by persons other than the client or his agent are not privileged.")

As an initial matter, the Court would observe that the documents identified in the privilege log – which the Board claims are subject to the attorney-client privilege – are not communications between a client and an attorney. Rather, attorneys Courtney Bullard and Scott Bennett were both retained to represent the Board in anticipation of litigation. Unless a client – in this case, the Board – actually participated in some way in these communications, the attorney-client privilege does not even come into play.

Even if the attorney-client privilege were deemed to be applicable, protection under the attorney-client privilege can be waived, if the client discloses protected communications and/or information to a third party. *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002). Where the client discloses confidential attorney-client communications, the privilege is waived as to all privileged communications on the same subject matter. *Anderson v. Clarksville Montgomery Cnty Sch. Bd.*, 229 F.R.D. 546 (M.D. Tenn. 2005); *Edwards v. Whitaker*, 868 F. Supp. 226, 229 (M.D. Tenn. 1994).

The case of *Doe v. Baylor University*, 320 F.R.D. 430 (W.D. Texas 2017), which examines waiver of the attorney-client privilege and the work product doctrine, is directly on point, well-reasoned and persuasive. In *Baylor*, after being confronted with allegations of sexual assaults perpetrated by members of the University's football team, the University commissioned a law firm, Pepper Hamilton, to conduct an investigation into such allegations and to prepare a report. In response to public interest in the allegations, the University released to the media a fifteen page summary of the report which included communications protected by the attorney-client privilege. According to the University, the summary represented "the full course" of the investigation. *Baylor*, 320 F.R.D. at 440. Because the University had released the detailed summary of the report to the public, the *Baylor* court found the University had waived the

6

attorney-client privilege as to "the entire scope of the investigation, and all materials, communications, and information provided to Pepper Hamilton as part of the investigation." *Id.* Similarly, I find that when the Board released the Bullard Report, it waived the attorney-client privilege as to the entire scope of the investigation performed by Attorney Bullard, and all materials, communications, and information provided to Attorney Bullard as part of her investigation.

### C. Work Product Doctrine

The work product doctrine, first articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), protects two types of information: (1) opinion work product, *i.e.*, material reflecting the attorney's mental processes, impressions, opinions, or legal theories; and (2) fact work product, *i.e.*, the written or oral information transmitted to the attorney and recorded as conveyed by the client. *Hickman,* 329 U.S. at 511; *In re Columbia/HCA Healthcare Corp.*, 293 F.3d at 294. "The doctrine is designed to allow an attorney to 'assemble information, sift what he considers to be relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] client's interests.'" *In re Columbia/HCA Healthcare Corp.*, 293 F.3d at 294 (brackets original) (quoting *Hickman*, 329 U.S. at 510).

The work product doctrine, as it applies to documents and tangible things, is now embodied in Fed. R. Civ. P. Rule 26(b)(3). Under Rule 26, if documents and other tangible things were prepared in anticipation of litigation by or for the other party – or by or for the other party's representative – a party may obtain discovery of the materials "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of

the materials by other means." Fed. R. Civ. P. 26(b)(3). "A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared 'in anticipation of litigation.'" *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) (quoting *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006)). "However, absent waiver, a party may not obtain the 'opinion' work product of his adversary . . . ." *In re Columbia/HCA Healthcare Corp.*, 293 F.3d at 294.

While information protected by the work product doctrine can be waived, "the mere voluntary disclosure to a third party is insufficient in itself to waive the work product privilege. Disclosure typically only waives work-product protection with respect to any document actually disclosed." *Baylor*, 320 F.R.D. at 442 (internal citation omitted); *see also In re Columbia/HCA Healthcare Corp.*, 293 F.3d at 305-06 (same). On the other hand, waiver of work product protection, including opinion work product, occurs where "the quality and substance of an attorney's work product have been directly placed at issue in the litigation by the party asserting the privilege." *Baylor*, 320 F.R.D. at 442. The example offered by the *Baylor* court is the advice-of-counsel defense sometimes asserted by a party. *Id.* In the instant case, the Board has placed the quality and substance of Attorney Bullard's mental impressions and opinions squarely at issue by indicating that it intends to use the contents of her report, which is replete with her mental impressions and opinions, in support of its defense in this case. This is accentuated by the fact that Attorney Bullard has been designated as an expert witness to testify concerning her mental impressions and opinions. Therefore, the Board has effectively waived the work product privilege with respect to the Bullard Report, as well as the entire scope of the investigation performed by Attorney Bullard, and all materials, communications, and information provided to Attorney Bullard as part of her investigation.

## IV. CONCLUSION

I rely upon the *Baylor* decision as well as the authority cited above in making the following findings concerning the documents listed on the Privilege Log:

1. Attorney Courtney Bullard was not acting as an expert witness during her investigation and preparation of the Bullard Report. Further, it is the Court's understanding that she was not acting as an expert witness during the time period that the documents reflecting communications between her and Attorney Scott Bennett were generated. Her belated designation as an expert witness does not provide Fed. R. Civ. P. 26(b)(4)(C)'s protection retroactively to communications between Attorney Bullard and Attorney Bennett for the time period that both were acting as the Board's attorneys and before Attorney Bullard was designated as an expert witness.

2. When the Board released the Bullard Report to the public, it waived the attorney-client privilege (to the extent such privilege ever applied), as to any documents prepared by Attorney Bullard (including draft reports), as well as any communications to or from Attorney Bullard which directly relate to her investigation and preparation of the Bullard Report.

3. Similarly, when the Board released the Bullard Report to the public, and expressed an intention to rely upon the investigation and report to defend the lawsuits against it, it waived the protection afforded under the work product doctrine as to both fact and opinion work product found in any documents prepared by Attorney Bullard (including draft reports) and in any communications to or from Attorney Bullard which directly relate to her investigation and preparation of the Bullard Report.

Accordingly, it is hereby **ORDERED** that:

1. By **Friday, January 12, 2018,** the Board shall provide to Plaintiffs' counsel copies of all documents listed in the Privilege Log, including draft reports and communications

to or from Attorney Bullard, which relate to her investigation and preparation of the Bullard Report.

2. If, upon review of the documents, the Board determines any documents in the Privilege Log do not fall within the broad description outlined immediately above, then the Board may provide copies of these documents to the Court for an *in camera* review.

**ENTER *NUNC PRO TUNC* TO FRIDAY, JANUARY 12, 2018.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE