**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION**

| | |
|---|---|
| **JOHN DOE**<br>**by and through his next friend JANE DOE**<br><br>    **PLAINTIFF**<br><br>**V.**<br><br>**HAMILTON COUNTY BOARD OF EDUCATION**<br>**d/b/a HAMILTON COUNTY SCHOOLS; et al**<br><br>    **DEFENDANTS.**<br><br>**RICHARD ROE, et al**<br><br>    **PLAINTIFFS**<br><br>**V.**<br><br>**HAMILTON COUNTY DEPARTMENT OF**<br>**EDUCATION, d/b/a HAMILTON COUNTY**<br>**SCHOOLS; et al**<br><br>    **DEFENDANTS.** | ).<br>).<br>).<br>).<br>).<br>).   **No. 1:16-CV-00373**<br>).   **JURY DEMAND**<br>).<br>).<br>).<br>).<br>).<br>).<br>).<br>).<br>).   **No. 1:16-cv-00497**<br>).   **JURY DEMAND**<br>).<br>).<br>).<br>).<br>). |

**DEFENDANT, HAMILTON COUNTY BOARD OF EDUCATION AND MARSHA
DRAKE'S, RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT
AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT**

Come now the Defendants, Hamilton County Department of Education and

Marsha Drake and would respond to Plaintiffs' Motion for Summary Judgment as

follows:

## Title IX

"Title IX liability can flow from two 'harassment' time periods: (a) when a school exhibits deliberate indifference, before a harassing attack on a student by another student, in a way that makes the student more vulnerable to the attack itself; or (b). when a school exhibits deliberate indifference after an attack, that causes a student to endure additional harassment." <u>Lopez v. Metropolitan Government of Nashville and Davison County</u>, 646 F. Supp. 2d 891, 917 citing <u>Snethen v. Bd. Of Public Educ. For City of Savannah</u>, 2008 WL 766569 at *2 (S.D. Ga. 2008).

### 1. Pre Assault – Lack of Deliberate Indifference

In this action, the Plaintiffs assert that these Defendants acted with deliberate indifference to them prior to the assault in Gatlinburg. (Complaint of John Doe, ¶ 117) (Complaint of Richard Roe, ¶ 73). However, there is simply no evidence in the record to support these allegations. The undisputed testimony in this action was that neither Plaintiffs, nor any other member of the basketball team, reported any alleged bullying, hazing, or harassment to any Defendant or employee of the Defendants. (See attached as Ex 1 - Depo John Doe p. 39-42, 63-65, 85-86; See attached as Ex 2 - Depo Richard Roe Jr. p. 27-28, 34-35, 39, 42-44, 54-55, 167-68; See attached as Ex 3 - Depo Montgomery p. 14-15 and 170; See attached as Ex 4 - Depo Nayadley p. 138-139). In fact, the Plaintiffs did not even report these alleged acts of bullying, hazing, or harassment to their parents prior to the Gatlinburg incident. (Ex 1 - Depo John Doe pp. 39-42, 63-65, 85-86; Ex 2 - Depo Richard Roe Jr. p. 27-28, 34-35, 39, 42-44, 54-55, 167-68; see attached as Ex 5 - Depo Jane Roe p. 29-32, 50-51; see attached as Ex 6 - Depo Jane Doe p. 56-57; see attached as Ex 7 - Depo Richard Roe, Sr. p. 18-21). As a

result, since these incidents, such as "racking in" or throwing individuals in a hot tub, did not take place in the presence of adults and, likewise, were not reported to adults, these Defendants possessed neither actual nor constructive notice of same. (Ex 1 - Depo John Doe pp. 39-42, 63-65, 85-86; Ex 2 - Depo Richard Roe Jr. p. 27-28, 34-35, 39, 42-44, 54-55, 167-68; Ex 5 - Depo Jane Roe pp. 29-32, 50-51; Ex 6 - Depo Jane Doe p. 56-57; Ex 7 - Depo Richard Roe, Sr. p. 18-21). As soon as the Defendants learned about the incident, they sprang into action and immediately sought medical care for John Doe, separated the Plaintiffs from their aggressors, removed the aggressors from the basketball team, and disciplined the aggressors pursuant to the Defendant Hamilton County Department of Education's student disciplinary policy. (Ex 3 - Depo Montgomery p. 187-198; see attached as Ex 8 - Depo Holmes p. 48). Thus, there is no foundation for an allegation of deliberate indifference since the Defendants had no knowledge of these incidents and, as a result, no opportunity to react to the instances. (Ex 1 - Depo John Doe p. 39-40; Ex 2 - Depo Richard Roe Jr. p. 27-28, 34-35, 39, 42-43, 167-68; Ex 3 - Depo Montgomery p. 14-15 and 170; Ex 4 - Depo Nayadley p. 138-139).

**Gender and Sexual Harassment**:

Plaintiffs allege that statements directed at the Plaintiffs, such as "toughen," "make you a man," "don't be a pussy," "this is going to make you a man" and "take it like a man" during the "racking in" were a form of gender based discrimination actionable under Title IX. (Ex 2 - Depo Richard Roe, Jr. p. 121, 199). Further, Plaintiffs claim that while being thrown in the hot tub in Gatlinburg that statements made such as "Don't be a girl," "This is going to make you a man" and "This is what we do at Ooltewah" were further evidence of actionable gender based discrimination. (Ex 2 - Depo Richard Roe,

Jr. p. 74-75).   However, in <u>Seasoms v. Snow</u>, that Court, when facing a similar circumstance, found that a male high school student did not state a claim under Title IX because he did not allege facts showing that the harassment was based upon sex. <u>Caparanis v. Ford Motor Co.</u>, 2013 U.S. Dist. LEXIS 175955 (N.D. Ohio Dec. 16, 2013) citing <u>Seamons v. Snow</u>, 84 F. 3d 1226 (10th Cir. 1996).   Specifically, "[the Plaintiff] points to comments made by school officials such as "boys will be boys" and "he should take it like a man" to support his argument that he was subject to a sexually hostile school environment. <u>Id.</u> at 1233.   The Court found that such statements fall short of showing sex discrimination. <u>Id.</u>   "The qualities that Defendants were promoting, team loyalty and toughness, are not uniquely male." <u>Id.</u>   Further, unlike in <u>Caparanis</u>, Plaintiffs in this case do not allege that these comments were being directed to them because they did not conform to the typical male stereotype.   Therefore, Plaintiffs have erroneously argued that these comments constitute unlawful sex stereotyping that may be actionable under Title IX since, pursuant to applicable case law, these statements are not evidence of gender based discrimination and certainly do not constitute conduct that is severe and pervasive.

Further, other than the actual statements themselves, Plaintiffs do not contend that the "racking in" and hot tub incidents were forms of unlawful sexual harassment or even sexual in nature. (Ex 1 - Depo John Doe pp. 34-35, 38, 47 and 54; Ex 2 - Depo Richard Roe Jr. pp. 30, 34, 42-43, 48, 164-166, 171-72).   Most importantly, the "racking in" and hot tub incidents were never reported to HCDE, inclusive of Coaches, Administration or even their parents. (Ex 1 - Depo John Doe pp. 39-40; Ex 2 - Depo

Richard Roe Jr. pp. 27-28, 34-35, 39, 42-43, 167-68; Ex 5 - Depo Jane Roe pp. 29-32; Ex 3 - Depo Montgomery pp. 14-15 and 170; Ex 4 - Nayadley p. 138-139).

**Training**

Likewise, in the Plaintiffs' Motion for Summary Judgment, they allege that the Defendants' training of its employees in the area of Title IX was inadequate, and as a result, caused or contributed to the incident that caused the Plaintiffs' injuries. However, an examination of the sheer volume and breadth of the training conducted by the Defendants in the months and years leading up to the assault renders the Plaintiffs' assertions untenable. Specifically, Ms. Karen Glenn, the Director of the Students Taking A Right Stand (hereinafter "STARS") program and the Safe Schools Learning Environment as well as the Title IX Coordinator for the Hamilton County Department of Education, provided extensive testimony in this cause in both her individual capacity and as the Federal Rule of Civil Procedure 30(b)(6) representative of the Defendant regarding the training that she conducted on the topics of bullying, hazing, and harassment.

As the Director of the STARS program, Ms. Glenn provides a quarterly report to schools within the district regarding bullying and harassment. (see attached as Ex 9 - Depo Glenn p. 34-35). Her anti-bullying duties through the STARS program begins in the elementary schools throughout the district with the Kindness Matters campaign that, together with the Olweus Bullying Prevention Program (hereinafter "OBPP"), aimed to prevent bullying at the elementary schools throughout the Hamilton County Department of Education's School System. (Ex 9 - Depo Glenn p. 34-35). This anti-bullying focus continues with the Move 2 Stand curriculum that, again along with OBPP, serve as

Case 1:16-cv-00373-HSM-CHS   Document 182   Filed 04/02/18   Page 5 of 22   PageID #: 4013

bullying prevention programs in the middle and high schools throughout the Hamilton County Department of Education's School System. (Ex 9 - Depo Glenn p. 44-45). The Move 2 Stand program, as implemented by Ms. Glenn and the STARS program, is empathy based training that attempts to have the students gain a better understanding of their peers and, in so doing, reduces bullying incidents between same. (Ex 9 - Depo Glenn p. 46).

As to the OBPP, Ms. Glenn was first certified as a trainer in the OBPP in 2009. (Ex 9 - Depo Glenn p. 89-91; see attached as Ex 10 - Depo Rule 30(b)(6) Rep. p. 18). As the Court knows, the OBPP is the most researched and best known bullying prevention program available to schools today. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 26-27). As a result, the usage and implementation of OBPP is widespread throughout Tennessee school systems. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 26-27). The OBPP program provides systemic change opportunities which address the societal norms that filter into schools from the outside world that encourage negative interactions amongst students. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 28). To that end, the OBPP, as implemented in the Hamilton County School System, both prevents bullying behavior and responds to bullying behavior when it does occur. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 29). As a result, the OBPP system in Hamilton County has both a short and a long term focus on bullying prevention. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 32). Importantly, as part of OBPP training, all students are encouraged to report bullying behavior. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 98-99).

After becoming certified to train in the OBPP protocol, Ms. Glenn used this knowledge to begin training Hamilton County Department of Education's staff and

students on OBPP. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 41).  The first OBPP training that she performed which related directly to Ooltewah High School was a core training session for assistant administrators throughout the school district in November 2014. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 41 and depo exhibits 31-46.)  Administrators from the Ooltewah High School were among those in attendance. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 41 and exhibit 46.)  The goals of this intensive training session were fourfold. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 24-25).  Specifically, the purpose of this workshop was to provide strategies for infusing prevention into school operations, to offer tools for school life to address bullying issues, to compel school personnel to sufficiently investigate and document allegations, and to better understand the Hamilton County Department of Education's legal obligation to respond thoroughly to bullying and harassment incidences. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 24-25).  In addition to presenting material to the attendees, Ms. Glenn engaged the seminar participants in role playing exercises provided by the United States Department of Education in which participants worked through numerous hypothetical situations involving bullying and harassment.  (Ex 9 - Depo Glenn p. 116-118; see OCR Hypotheticals attached as Exhibit 2 to Depo Glenn).  Several of these scenarios specifically dealt with Title IX issues. (Ex 9 - Depo Glenn p. 116-118).  Further, in addition to Ms. Glenn addressing the participants on the manner in which bullying could result in a potential Title IX violation, Mr. Scott Bennett, the Hamilton County Department of Education's attorney, also spoke at this session to explain to attendees their obligations to respond to bullying and harassment under various applicable laws including Title IX.  (Ex 10 - Depo Rule 30(b)(6) Rep. p. 25).

7

Case 1:16-cv-00373-HSM-CHS   Document 182   Filed 04/02/18   Page 7 of 22   PageID #: 4015

This training was collaborative in that the administrators in attendance worked with Ms. Glenn to create, adapt, and modify anti-bullying material to be used in their schools, including Ooltewah High School. (Ex 9 - Depo Glenn p. 99-100). Specifically, the OBPP provided anti-bullying posters to use in each school to serve as a reminder to students regarding the dangers of bullying. (Ex 9 - Depo Glenn p. 99-100). The Ooltewah High School anti-bullying team modified the poster for use at the high school by changing the posters to encourage students to "give a hoot" about one another in a play on the school's owl mascot. (Ex 9 - Depo Glenn p. 101-102). These posters, when placed at the Ooltewah High School, encouraged students to report bullying to adults, both at school and at home. (Ex 9 - Depo Glenn p. 68). The attendees further worked together with Ms. Glenn to create materials to guide all school staff through the bullying prevention and response process. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 112-113). These materials consisted of classroom lessons which were required to be taught to students at Ooltewah High School for at least three classroom sessions per class per school year. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 112-113). The participants also worked together to create on-the-spot bullying intervention cards that were intended to be worn under each staff members' identification badge at all times so that if a staff member witnessed or learned of a bullying incident, that staff member could refer to the card for immediate guidance on how to most effectively handle the situation. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 79-80, 114-115 and intervention cards attached as exhibit to 30(b)(6) deposition.) Ms. Glenn also provided numerous other documents to participants for them to take back to their schools. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 38, 59-60). These documents included a workbook to assist with the implementation of

the OBPP, tools that served as a guide to assist in investigating alleged bullying incidents, and reporting forms to help schools with keeping tabs on bullying incidents and complying with Tennessee reporting requirements. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 38, 59-60 and Exhibits 56-65 to 30(b)(6) deposition.)

Ms. Glenn's next training session was directly to the students themselves. (Ex 10 - Depo Glenn p. 50; Depo Rule 30(b)(6) Rep. p. 124). In November 2014, Ms. Glenn conducted a high school youth summit training session for Ooltewah High School's core student group. (Ex 9 - Depo Glenn p. 50; Ex 10 - Depo Rule 30(b)(6) Rep. p. 124). This OBPP training worked by training a group of students labeled as "change agents" in the school on the anti-bullying and harassment principals and protocols contained within OBPP. (Ex 9 - Depo Glenn p. 47-49). To ensure maximum effectiveness of the training and dissemination of the material contained within the training, these change agents were selected from the student population so as to cover the widest swath of the student population possible. (Ex 9 - Depo Glenn p. 47-49). As a result, a number of different student groups, including athletes, were included in the training. (Ex 9 - Depo Glenn p. 51-52; Ex 10 - Depo Rule 30(b)(6) Rep. p. 124). Ms. Glenn employed student surveys that she began conducting in 2012 at Ooltewah High School on the climate of the school as to student engagement, safety, bullying, and sexual harassment, in training both the administrators in September and the change agent students in November 2014. (Ex 9 - Depo Glenn p. 18-19, 21, 29). Specifically, these surveys assisted participants in learning data as to patterns of bullying in the school so that the participants could assist in combating bullying more efficiently. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 52-53). The purpose of this high school youth summit training session

was to equip these change agents with the tools they needed to go back into their schools to train other students and in so doing positively influence the school's climate. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 124).

With the assistance of the core group of administrators that she previously trained on the OBPP, Ms. Glenn conducted schoolwide training on OBPP in August 2015, which was attended by the entire teaching staff of the Ooltewah High School. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 82). At that training, Ms. Glenn, assisted by a PowerPoint presentation that she continuously created and modified, emphasized that the OBPP is for all students, that it is both preventative and responsive as to bullying, and that the OBPP required systemic efforts over time since the teaching staff needed to assist in changing social norms within the school. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 85-86) (Please see PowerPoint Presentation attached as Exhibit 31 to Rule 30(b)(6) deposition.) Further, during this training Ms. Glenn discussed with the staff of Ooltewah High School what bullying truly is, how to identify bullying, where to look for bullying, how to intervene when you learn about bullying, and the necessity of investigating bullying and being proactive about dealing with bullying. (Ex 9 - Depo Glenn p. 116). Ms. Glenn also went through the school bullying environment survey with the educators present at this training session so that they would know the methods of bullying that were most prevalent at Ooltewah High School, as well as the locations where bullying was most likely to occur. (Ex 10 - Depo Rule 30(b)(6) Rep. p. 101-105). Further, Ms. Glenn has instituted numerous other anti-bullying measures, such as bringing in a nationally known speaker to speak to an entire freshman class at Ooltewah High School as part of a cyber bullying initiative entitled "i-safe", overseeing online Title IX training

that all staff must complete, working with the aforementioned core group of administrators to provide the Ooltewah High School staff with positive incentive cards to give to students witnessed engaging in positive behavior, and ensuring that all students and parents at Ooltewah High School received a code of acceptable conduct which spells out the definitions and consequences of hazing, bullying, harassment and cyberbullying. (Ex 9 - Depo Glenn p. 52-53, 69, 78, 136-137).

It is no surprise then that Ms. Courtney Bullard, the independent investigator hired by the Hamilton County Department of Education to fully investigate the Gatlinburg incident, as well as the circumstances preceding and surrounding it, found that the school system, and Ms. Glenn in particular, had conducted a substantial amount of training prior to this incident in the areas of bullying and harassment. (See attached as Exhibit 11 - Bullard Report, p. 17-21). Specifically Ms. Bullard, in her investigation, found that the administrators, staff, and students at OHS were trained in both bullying and harassment. (Ex 11 – Bullard Report, p. 17-18). This training, conducted through the OBPP, is mandated and provides in depth instruction on identifying, preventing, and responding to bullying, as well as discussing bullying's relationship to other civil rights' violations such as discrimination and sex and gender based harassment. (Ex 11 – Bullard Report, p. 17). It is for this reason that Ms. Bullard states on page 18 of her report that "[t]he HCDE has made significant efforts to combat bullying" and further that "OHS has gone above and beyond [the] HCDE mandate in its efforts to combat bullying. OHS provided robust bullying training for all of its teachers and participated in STARS for its students. OHS's efforts are evident throughout the school grounds with posters and pamphlets." (Ex 11 – Bullard Report, p. 18). As to Title

IX, Ms. Bullard noted that every administrator or staff member in the school system must review the HCDE's Harassment/Sexual Harassment and Discrimination Board Policy annually, that the OBPP at OHS included training on conduct that constitutes sex and gender based harassment, and that Ms. Glenn has further trained some of OHS' administration on "the interplay between bullying and other civil rights violations, including sex and gender based harassment." (Ex 11 – Bullard Report, p. 20). As a result, the Plaintiffs are hard pressed to show unto the Court that these Defendants did not sufficiently train their employees when the record in this action is replete with proof of such training.

### 2. **Post Assault - Lack of Deliberate Indifference**

It should be noted that Plaintiff Roe is the only Plaintiff that seeks summary judgment on the issue of Post Assault Deliberate Indifference. As the Court is aware, the incident in question occurred while school was out for Christmas Break. (Ex 1 - Depo John Doe p. 158; Ex 7 - Depo Richard Roe, Sr. p. 85-86). Following the incident in question, Steve Holmes was assigned to investigate the incident in Gatlinburg. (Ex 8 - See generally the deposition of Steve Holmes). However, on Monday January 4, 2016, District Attorney General contacted Attorney Scott Bennett and informed him as follows:

> I hope this email finds you doing well. Over the last week, my office has fielded a number of inquiries regarding the allegations of certain Ooltewah basketball players at a cabin in Gatlinburg. I have had conversations with the lead detective from Gatlinburg and have been updated on the case investigation. In addition, I have asked the Hamilton County Sheriff's Office along with investigators from my office to determine if any criminal activities have occurred in Hamilton County. Based upon all the information I have received, my decision to request a local Hamilton County

investigation has been reinforced. About an hour ago, I received another phone call from the lead Gatlinburg detective who has got a call from one of the team's parents. Apparently, the Ooltewah principal called her home and asked to speak with her child to set up a 1 pm interview tomorrow with the basketball team. As you can imagine, she was quite concerned.

At this juncture, there is a pending criminal investigation in Sevier County and I have requested a criminal investigation in Hamilton County. If there are scheduled interviews tomorrow of the basketball players, such should not occur and must be cancelled. The pending criminal investigations will take care of those interviews and any other attempt could be seen as detrimental to the criminal investigation. I am sure you understand the necessity of such precautions. The officials in Sevier County are concerned such interviews could tamper with or compromise their current investigation. I recognize and agree with their concern and if such exists for them, it surely extends to the local investigation. Please impress upon Dr. Smith and the Ooltewah principal that such interviews need not occur and could result in negative repercussions. I will do the same if needed. Please call me if you desire at 423-619-7398.

(See email from Attorney General Pinkston to Scott Bennett attached as Exhibit 12.)

In response Attorney Scott Bennett replied as follows:

Good evening, Neal, and thank you for your email.

As a matter of fact, I spoke at length today with the lead detective and the ADA heading up the prosecution in Sevier County. While they shared with me a number of things that they believed I should know, they asked that the Board of Education delay taking any action until such time as they completed their investigation. Immediately upon getting off the phone with them, I spoke with Superintendent Smith and advised that we needed to step back despite the public pressure to do otherwise. He agreed and advised that he would direct his team to stand down.

I intend to share most of what the ADA shared with me in executive session Wednesday. Beyond that, I will state publicly that HCDE needs to adhere to its practice of NOT commenting upon matters that are under criminal investigation.

If you have any additional thoughts, please feel free to share
them with me.  And I appreciate your involvement.
(See email from Attorney General Pinkston to Scott Bennett attached as Exhibit 12.)

Based upon the directive of the District Attorney, the Hamilton County Department of Education was forced to suspend its own investigation pending the outcome of the criminal investigation. (See Ex 12.)  In the interim from the Gatlinburg incident until the cease and desist order by the District Attorney's office, Courtney Bullard, who conducted an independent investigation for the Hamilton County Department of Education, found as follows:  "With respect to the freshman who was physically injured, I found that the HCDE satisfied its Title IX obligations in its response. Mr. Montgomery and the other adults present in the cabin took immediate action to identify and eliminate the hostile environment and address its effects once on notice. Mr. Montgomery attempted to ascertain what happened, promptly sought medical care for the victim, and quickly notified his family.  Once the police became involved, the coaches followed directive, kept the assailants separate from the victim pursuant to the detective's recommendations, and ultimately drove the assailants back to the Chattanooga in the early morning hours of December 23rd.  Mr. Montgomery also notified Mr. Nayadley that evening with current information.  Thereafter, OHS suspended all three assailants." (Ex 11 - Bullard Report p. 12).  The Director of Schools Rick Smith cancelled the rest of the basketball season. (See attached as Ex 13 - Depo Jarvis p. 119).  Further, both Plaintiffs enrolled in Hamilton Heights for the remainder of the school year; therefore, they did not have any contact at HCDOE with the assailants. (Ex 6 - Depo Jane Doe p. 39 and 66; Ex 2 - Depo Richard Roe, Jr. p. 11).

With regard to Richard Roe, Plaintiff is attempting to use emails between Courtney Bullard and Attorney Scott Bennett as evidence of post assault deliberate indifference. Plaintiff relies on the fact that Courtney Bullard, three months after the Gatlinburg incident, urged Principal Jarvis to reach out and comfort former students. (Ex 11 - Bullard Report) Richard Roe erroneously couches these emails as if they were specifically referring to Richard Roe. (Ex 11 - Bullard Report)

In <u>K.T. v. Culver-Stockton College</u>, 865 F. 3d 1054, 1058 (8th Cir. 2017), K.T. alleged that Culver-Stockton College was deliberately indifferent for failing to adopt practices to prevent sexual harassment and failed to offer medical services after it received reports of the incident. Specifically, it was alleged that "as a direct and proximate result of . . . [Culver-Stockton] failure to investigate and provide guidance, counseling and treatment, . . . Plaintiff sustained substantial mental and emotional distress and . . [s]he currently suffers from post-trauma syndrome and psychiatric overlay." The Court found that at most, the post assault emotional trauma consisted of complaints of inaction and that the Plaintiff failed to prove that the college subjected Plaintiff to additional unlawful harassment after the assault.

Simply put, Plaintiffs have erroneously attempted to show deliberate indifference after the Gatlinburg incident by pointing to emails between Ms. Bullard and HCDOE attorney Scott Bennett about reaching out to the members of the team regarding counseling. However, at the outset it should be noted that at the time of these emails, both Doe and Roe were no longer students enrolled with the HCDOE. (Ex 6 - Depo Jane Doe p. 39 and 66; Ex 2 - Depo Richard Roe, Jr. p. 11). Further, there is no evidence or testimony that due to a lack of response by the HCDOE that the Plaintiffs

suffered any additional injuries after the Gatlinburg incident as a result of HCDOE's response to the incident in question. Therefore, Plaintiffs have failed to show post assault deliberate indifference.

### 3. 42 U.S.C § 1983

### Training

In <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978), the Supreme Court held that a municipality can be found liable under § 1983 where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983. It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385 (1989). There are limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983." <u>Id.</u> at 387. Such liability may arise only where the governmental entity is deliberately indifferent by not training its employees adequately to address an obvious need. <u>Beard v. Whitmore Lake Sch. Dist.</u>, 244 Fed. Appx. 607, 611 (6th Cir. 2007).

Before a school district can be held liable for inadequate training, a plaintiff must show that (1) the district's training was inadequate for the tasks that the employees performed, (2) the inadequacy was the result of deliberate indifference, and (3) the inadequacy was 'closely related to' or 'actually caused' the injury at issue. <u>Lopez v. Metro. Gov't of Nashville & Davidson Cty.</u>, 646 F. Supp. 2d 891, 912 (M.D. Tenn. 2009).

The focus of the first element of a failure to train claim is on the adequacy of the training program in relation to the tasks the particular municipal employees must

perform. City of Canton, 489 U.S. at 390. A plaintiff must prove that the school district failed to provide specific training on the constitutional violation at issue. Curry ex rel. Curry v. Sch. Dist. of the City of Saginaw, 452 F. Supp. 2d 723, 732 (E.D. Mich. 2006), aff'd on other grounds sub nom. Curry ex rel Curry v. Hensiner, 513 F.3d 570 (6th Cir. 2008).

The second element of a failure to train claim requires a plaintiff to prove that the municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants. City of Canton, 489 U.S. at 389. A showing of deliberate indifference requires a showing of something more culpable than a negligent failure to recognize a high risk of harm. Sargi v. Kent City Bd. of Educ., 70 F. 3d 907, 912 (6th Cir. 1995). In order to establish the requisite "deliberate indifference," a plaintiff must generally show prior instances of unconstitutional conduct demonstrating that the school district has ignored a history of problems with peer-to-peer sexual harassment and was clearly on notice that the training in this particular area was deficient and likely to cause injury. Marcum ex rel. C.V. v. Bd. of Educ. of Bloom-Carroll Local Sch. Dist., 727 F. Supp. 2d 657, 676 (S.D. Ohio 2010). Further, the need for more or different training must be so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. City of Canton, 489 U.S. at 389.

The third element of a failure to train claim requires a plaintiff to prove that the Board's "custom" was the "moving force" or direct causal link of their injuries. Richardson v. Huber Heights City Sch. Bd. of Educ., 651 F. App'x 362, 367 (6th Cir. 2016). Further, to satisfy the Monell requirements, Plaintiffs must "identify the

policy…and show that the particular injury was incurred because of the execution of that policy." <u>Garner v. Memphis Police Dep't</u>, 8 F. 3d 358, 364 (6th Cir. 1993). This is a causation inquiry, requiring a demonstration of both cause in fact and proximate cause. <u>Richardson</u>, 651 F. App'x at 367. Plaintiffs must show that the Board's inaction and indifference to the culture of bullying was the "but for" cause of Plaintiff's injury. <u>Id.</u> Moreover, the Plaintiffs must prove that it was reasonably foreseeable that the harm complained of would befall the Plaintiff as a result of the Board's conduct. <u>Id.</u> Specifically, in cases of student-on-student rape, Plaintiffs must show that the failure to train was a factor in the alleged rape committed by another student. <u>Lopez</u>, 646 F. Supp. 2d at 912. In <u>City of Canton</u>, 489 U.S. at 391–92, the Supreme Court stated that to adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a municipal employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident. <u>City of Canton</u>, 489 U.S. at 391–92. Thus, permitting cases against municipalities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior liability on municipalities—a result the Supreme Court rejected in <u>Monell</u>. <u>Id.</u>

Further, Plaintiffs attempt to lump a "bullying epidemic" with Title IX. However, Karen Glenn did extensive training on bullying throughout the system. This training is discussed in depth *supra* on pages 5-12 of this Response. Further, Courtney Bullard, in her External Report found that the training Coach Montgomery received on bullying allowed him to adequately respond to the Gatlinburg incident. (Ex 11 – Bullard Report,

p. 20-21). Specifically, "both Mr. Jarvis and Mr. Nayadley received training on bullying, which includes identifying and responding appropriately to the behavior. Most of the behavior covering in the training on bullying also encompasses behavior that constitutes sex-and gender-based harassment. (Ex 11 – Bullard Report, p. 13). Thus, even though his training may not have delineated between the HCDE's Title IX obligations and obligation in responding to bullying, it included the necessary information to inform them, as administrators, of how to address those behaviors. (Ex 11 – Bullard Report, p. 13).

**Equal Protection**

The Sixth Circuit recognizes two methods of proving an equal protection violation based on a school official's response to peer harassment: (1) disparate treatment of one class of students who complain about bullying as compared to other classes of students, see Soper v. Hoben, 195 F. 3d 845, 852 (6th Cir. 1999), and (2) deliberate indifference to discriminatory peer harassment, see Shively v. Green Local Sch. Dist. Bd. of Educ., 579 Fed. Appx. 348, 356–57 (6th Cir. 2014); Port Huron, 455 Fed. Appx. at 618. Stated another way, a plaintiff "must show either that the defendants intentionally discriminated or acted with deliberate indifference." Shively, 579 Fed. Appx. at 357.

Under the disparate treatment theory, a male plaintiff claiming gender discrimination must introduce evidence that his complaints of peer harassment were treated differently by school officials than female students' similar complaints. See Soper, 195 F. 3d at 852. The deliberate indifference standard used for proving a § 1983 equal protection violation in peer harassment cases is "substantially the same" as the

deliberate indifference standard applied in Title IX cases. Stiles ex rel. D.S. v. Grainger Cty., Tenn., 819 F. 3d 834, 852 (6th Cir. 2016).

In the present case, there have been no allegations or evidence that the Plaintiffs' complained about sexual harassment. Therefore, there has been no testimony that similarly situated females' reports of sexual harassment were treated differently.

## Conclusion

Based upon the foregoing, these Defendants respectfully request that the Court deny the Plaintiffs' Motion for Summary Judgment as to these Defendants. Further, in support of their Motion for Summary Judgment, these Defendants incorporate by reference their previously filed Memorandum in Support of their Motion for Summary Judgment and supporting Exhibits. (See Document numbers 177-1 through 177-19).

Respectfully submitted,

PURCELL, SELLERS & CRAIG, INC.


By:     s/Christopher C. Hayden
        Charles M. Purcell (012461).
        Jennifer C. Craig (020036).
        Christopher C. Hayden (028220).
        Attorneys for Defendant
        P.O. Box 10547
        Jackson, Tennessee 38308
        (731). 300-0737
        Chuck@psclegal.com
        jennifer@psclegal.com
        Chris@psclegal.com

<u>CERTIFICATE OF SERVICE</u>

     The undersigned certifies that a true and correct copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system.

s/Christopher C. Hayden

Date:      April 2, 2018

PERSONS SERVED:

Monica Beck
The Fierberg National Law Group, PLLC
School Violence Law
105 East Philip Street
P.O. Box 121
Lake Leelanau, MI 49653

Edmund J. Schmidt, III
Law Office of Eddie Schmidt
2323 21st Avenue South, Suite 502
Nashville, TN 37212

Arthur F. Knight, III
Taylor & Knight, G.P.
800 South Gay Street, Suite 600
Knoxville, TN 37929

Justin S. Gilbert
Gilbert Russell McWherter Scott Bobbitt PLC
100 W. Martin Luther King Blvd., Suite 504
Chattanooga, TN 37402

Eric J. Oliver
Lewis & Oliver
100 W. Martin Luther King Blvd., Suite 501
Chattanooga, TN 37402

Jordan K. Crews
Brian A. Pierce
Office of Attorney General
General Civil Division
P.O. Box 20207
Nashville, TN 37202

Curtis L. Bowe, III
Bowe & Associates, PLLC
707 Georgia Avenue, Suite 301
Chattanooga, TN 37402

Jaclyn L. McAndrew
Heather Ross
Office of Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202

Thomas William Caldwell
W. Carl Spining
Ortale, Kelley, Herbert & Crawford
P.O. Box 198985
Nashville, TN 37219

Rheubin M. Taylor
Office of the County Attorney
Room 204, County Courthouse
Chattanooga, TN 37402

Benjamin M. Rose
Joshua D. Arters
Law Office of Ben M. Rose, PLLC
P.O. Box 1108
Brentwood, TN 37024